UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

STEUBEN FOODS, INC.,

        Plaintiff,
v.                                                   **DECISION AND ORDER**
                                                                         09-CV-989S

INTERNATIONAL DISPENSING
CORPORATION and
GREGORY ABBOTT,

        Defendants.

## I. INTRODUCTION

On November 16, 2009, Plaintiff Steuben Foods, Inc. commenced this civil action by filing a complaint in the United States District Court for the Western District of New York. Therein, Plaintiff requests a declaratory judgment and an award of compensatory damages for anticipatory breach of contract in violation of state law. Presently before this Court is Defendants' Motion to Dismiss Plaintiff's complaint and request for sanctions. For the reasons discussed below, Defendants' motion is granted in part and denied in part.

## II. BACKGROUND

**A.    Facts**

In adjudicating Defendants' Motion to Dismiss, this Court assumes the truth of the following factual allegations contained in the complaint. See Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976); see also Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997).

Plaintiff is a New York corporation and maintains a place of business at 1150 Maple

Road in Elma, New York. (Compl., ¶¶ 15, 28.) Plaintiff manufactures and markets aseptically-processed foods and beverages, including certain "bag-in-box" products.[1] (Compl., ¶ 28.)

Plaintiff alleges that Defendant International Dispensing Corporation ("IDC") is a Delaware corporation and "maintains a place of business at 5818 South Elm Street in Hinsdale, Illinois." (Compl., ¶ 15.) Plaintiff further alleges that Defendant Abbott is a resident of the County of Pitkin, Colorado. (Compl., ¶ 16.) Defendant Abbott founded Defendant IDC several years ago. (Compl., ¶ 1.)

Defendant IDC developed a "Fresh Flow Tap" aseptic valve (the "Valve") that permits storage and dispensation under commercial conditions of low acid products in a non-refrigerated state when used with aseptic "bag-in-box" processing technology. (Compl., ¶ 1.) Plaintiff alleges that in or about June 2006, Defendants entered into an Exclusivity and Marketing Agreement ("Agreement") with Plaintiff. (Compl., ¶ 2.) Under the Agreement's terms, Plaintiff received the exclusive right to use the Valve in certain product categories to market it to its customers. (Compl., ¶ 2.)

Plaintiff asserts that at or about the same time the parties entered into the Agreement, Defendants also offered Plaintiff an Astepo brand aseptic filling machine (the "Filler") at no additional charge. (Compl., ¶ 4.) Plaintiff maintains that receipt of the Filler was conditioned on its use for marketing purposes pursuant to the Agreement. (Compl., ¶ 5.) Plaintiff further maintains that it accepted Defendants' offer and subsequently took possession and ownership of the Filler. (Compl., ¶¶ 7-9.) Plaintiff contends that during the

---

[1] The aseptic process involves storing a sterilized product in a sealed, sterilized package (e.g., a box of wine).

2

ensuing 18 months, Defendants never claimed that they retained title to the Filler. (Compl., ¶ 9.) Plaintiff admits that it did not have the opportunity to market the Filler during this time. (Compl., ¶ 8.)

Plaintiff alleges that Defendants now claim ownership of the Filler and intend to repossess it, unless Plaintiff agrees to purchase, lease, or lease-to-buy it at a price "substantially in excess" of its current market value. (Compl., ¶ 11.) In its complaint, Plaintiff requests a declaratory judgment that it is the "sole owner of the Filler" and compensatory damages in excess of $2 million, plus interest, attorneys' fees, costs, and any other relief this Court deems just and proper. (Compl., ¶ 13.)

### B. Procedural History

Plaintiff commenced this action on November 16, 2009, by filing a complaint in the United States District Court for the Western District of New York. Defendants filed the instant Motion to Dismiss on December 10, 2009, supported by the Declaration of Gregory P. Vidler ("Vidler Decl.") and the exhibits thereto, the Affidavit of Gregory Abbott ("Aff. Abbott") and the exhibits thereto, and a memorandum of law ("Defendants' Memorandum"). Plaintiff filed the Declaration of Frank V. Balon in opposition ("Balon Decl.") on January 20, 2010.[2] Defendants filed their reply memorandum ("Defendants' Reply") on February 1, 2010.

---

[2] If Defendants' motion is not denied outright, Plaintiff, in its memorandum, requests that this Court schedule a "hearing with respect to the issues regarding citizenship and domicile raised by defendants' motion." (Balon Decl. ¶ 33.)

**III. DISCUSSION**

**A.      Legal Standard**

Defendants bring their Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, which provides for dismissal of a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In considering a Rule 12(b)(1) motion, the allegations contained in the complaint are deemed true, and the court may consider affidavits and other material beyond the pleadings to resolve the jurisdictional question. See id. (citing Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986)).

Diversity jurisdiction is available only when all adverse parties to litigation are citizens of different states. See Herrick Co. v. SCS Commc'ns, Inc., 251 F.3d 315, 322 (2d Cir. 2000) (citing Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373-74 (1978)). Under the diversity statute, 28 U.S.C. § 1332, a party's citizenship is a "mixed question of fact and law." Palazzo v. Corio, 232 F.3d 38, 42 (2d Cir. 2000). An individual's citizenship is the legal component of the question, which is determined by her domicile. Id. Domicile is "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." Linardos v. Fortuna, 157 F.3d 945, 948 (2d Cir.1998) (citations omitted). Domicile is established at birth and is "presumed to continue in the same place absent sufficient evidence of a change." Palazzo, 232 F.3d at 42; see Lindaros, 157 F.3d at 948; see also Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989). Although an

4

individual may have multiple residences, she may have only one domicile. Nat'l. Artists Mgmt. Co. v. Weaving, 769 F. Supp. 1224, 1227 (S.D.N.Y. 1991); see Williamson v. Osenton, 232 U.S. 619, 34 S.Ct. 442, 58 L.Ed. 758 (1914). When there is evidence that an individual retains multiple residences, the court must focus on the party's intent. Nat'l. Artists Mgmt. Co., 769 F. Supp. at 1227. Courts look to the "totality of the evidence" to determine an individual's domicile. Hicks v. Brophy, 841 F. Supp. 466, 467 (D. Conn. 1994).

For purposes of diversity jurisdiction, "a corporation is deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1). "The principal place of business prong does not replace the citizenship of the state of incorporation; it merely adds another state of citizenship; *either* of which could destroy diversity." Grunblatt v. UnumProvident Corp., 270 F. Supp.2d 347, 351 (E.D.N.Y. 2003) (emphasis in original). "For complete diversity to exist, therefore, no adversary of a corporation may be a citizen of the state in which the corporation is incorporated, or of the state in which it has its principal place of business." Boyd, Weir & Sewell, Inc. v. Fritzen-Halcyon Lijn, Inc., 709 F. Supp. 78 (S.D.N.Y. 1989).

The Second Circuit employs both the "nerve center" and the "locus of operations" tests to determine a corporation's principal place of business. The "nerve center" is the location "from which [the corporation] radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in the furtherance of the corporate objective." R.G. Barry Corp. v. Mushroom Makers, Inc., 612 F.2d 651, 655 (2d Cir. 1979) (quoting Scot Typewriter Co. v. Underwood Corp., 170 F.

Supp. 862, 865 (S.D.N.Y. 1959)). The "locus of operations" refers to the state in which the corporation "has its most extensive contacts with, or greatest impact on, the general public." Center for Radio Information, Inc. v. Herbst, 876 F. Supp. 523, 525 (S.D.N.Y 1995.)

When presented with a Rule 12(b)(1) motion, a district court may conduct an evidentiary hearing to resolve the disputed jurisdictional facts, if necessary. See Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247 253 (2d Cir. 2000). "[T]he district court need not hold a hearing on a Rule 12(b)(1) motion in the absence of complex legal or factual questions," however. Rich v. United States, 119 F.3d 447, 449 n. 1 (6th Cir. 1997). Ultimately, it is the plaintiff's burden to establish proper jurisdiction by a preponderance of evidence. Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003); Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996).

### B. Plaintiff's Complaint and Defendants' Motion to Dismiss

#### 1. Plaintiff's Complaint

Plaintiff asserts that this Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) in that (1) complete diversity of citizenship exists between Steuben Foods and Defendants and (2) the amount in controversy exceeds $75,000.00, exclusive of interests and costs.[3] Plaintiff maintains that it is a New York corporation and Defendant IDC is a "Delaware corporation which maintains a place of business in Hinsdale, Illinois." (Compl., ¶¶ 14, 15.) Plaintiff further asserts that Defendant Abbott is a "resident" of Colorado.

---

[3] There is no dispute that the amount in controversy requirement is met here because Plaintiff requests compensatory damages in excess of $2 million. (Compl., ¶ 78.)

6

(Compl., ¶ 16). In support, Plaintiff relies on government records as well as Defendant Abbott's admission to maintaining a home in Aspen, Colorado. (Balon Decl., ¶ 18.) Plaintiff also produced documents indicating that Defendant Abbott maintains a Colorado driver's license (Balon Decl., ¶ 18, Ex. A), has been registered to vote in Colorado since February 16, 2000, and last voted in a Colorado state election on November 4, 2008. (Balon Decl., ¶ 4, Ex. B.)

### 2. Defendants' Motion to Dismiss

Defendants maintain that Plaintiff's complaint must be dismissed because complete diversity does not exist. (Defendants' Reply, pp., 2-4.) More specifically, Defendants maintain that IDC is a citizen of Delaware and New York and that Abbott is also a New York citizen. (Id., pp., 4-8.)

Defendants also question whether Plaintiff acted in good faith in filing the present action. (Defendants' Memorandum, p. 5, n. 6.) More specifically, Defendants assert that Plaintiff made numerous claims that are "legally and factually frivolous" and approach "sanctionable conduct under Rule 11." (Defendants' Reply, p. 9, n. 11.) Accordingly, Defendants request that this Court issue an Order to Show Cause "why sanctions should not be imposed under Fed.R.Civ.P. 11(c)(3)." Id.

In opposition, Plaintiff asserts that its evidence establishes that the parties are diverse and that the burden of persuasion now shifts to Defendants to rebut this presumption. (See Balon Decl. ¶¶ 17-19.) Plaintiff cites a single case — Apace Commc'ns, Ltd. v. Burke, No. 07-CV-6151L, 2009 WL 1748711 (W.D.N.Y 2009) — in support of this proposition. Upon close reading, however, it is clear that Plaintiff misconstrues the Apace

7

decision.

The issue in Apace was whether the defendant had "*changed* his domicile prior to the commencement of [the] lawsuit" to destroy diversity of citizenship. Id. at *2 (emphasis added.) First, the Apace court noted that the party invoking diversity jurisdiction bears the initial burden of persuasion to establish parties' initial domiciles in a manner that supports the existence of diversity jurisdiction. Id. at *3. Second, once an "initial showing" is made, the opposing party bears the burden of showing that a "change of domicile has occurred." Id. at *4. This rule does not displace the general requirement that the party asserting diversity jurisdiction bears the burden of demonstrating it by a preponderance of the evidence. See Herrick Co., 251 F.3d at 323-24.

In the present case, however, Defendants challenge diversity on the ground that Plaintiff was "plain wrong" as to Defendants' initial citizenship, not upon a *change* in citizenship. (Defendants' Memorandum, p. 4.) More specifically, Defendants assert that Defendant Abbott is and always has been a New York citizen and Defendant IDC is a citizen of *both* Delaware and New York. Id. Consequently, Apace is not instructive here.

Nevertheless, subject matter jurisdiction remains "an unwaivable *sine qua non* for the exercise of federal judicial power." Curley v. Brignoli, Curley & Roberts Assocs., 915 F.2d 81, 83 (2d. Cir. 1990). Accordingly, the question remains whether Plaintiff established that the parties are in fact diverse based upon their initial citizenships.

**C.    Defendants' Citizenship**

In this Court's view, Plaintiff has failed to establish, by a preponderance of the evidence, that Defendant Abbott is a Colorado citizen. Although Plaintiff touts Defendant Abbott's Aspen, Colorado, home as proof of domicile, the record reveals that it is not his

primary residence. Instead, Defendant Abbott's Manhattan apartment is his current residence because he lived there for the entire 12 months of 2008 according to his 2008 New York State Tax return. (Aff. Abbott, Ex. 1.) See Boston Safe Deposit & Trust Co. v. Morse, 779 F. Supp. 347, 349 (S.D.N.Y. 1991) (holding that current residence is a factor for establishing domicile.) Nothing in the record suggests that Defendant Abbott resides at the Aspen property. In addition, Defendant Abbott's children attend school in New York and his wife also resides in New York. (Aff. Abbott, Ex. 1, 2.) See Nat'l Artists Mgmt. Co. v. Weaving, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991) (holding that the location of an individual's spouse and children is given "considerable weight".) Defendant Abbott uses his New York residence as his place of business; Abbott's permanent home address in New York, as listed on the 2008 New York State Income Tax Return, is identical to IDC's Corporate Office according to its website. (Aff. Abbott, Ex. 1, 2, and 4). Defendant Abbott also pays New York State income and property taxes. (Aff. Abbott, Ex. 1.) See id. (citing 1 *Moore's Federal Practice* ¶ 0.74[3-3] at 707.64) (noting payment of income taxes as an "influential" factor of an individual's intent to remain.) Based on the totality of the evidence, Plaintiff has failed to establish that Defendant Abbott's citizenship differs from Plaintiff's New York citizenship or that Defendant Abbott intends to be a citizen of any state other than New York.

Even if it had convinced this Court that Defendant Abbott was a Colorado citizen, Plaintiff's bid for establishing complete diversity would nonetheless fail because Defendant IDC is also a citizen of New York. Once again, Plaintiff's misapplication of Apace dooms its contention that Defendant IDC's citizenship is diverse. Plaintiff maintains that

9

"Defendants have failed on this motion [to dismiss] to provide this Court with any actual information or data regarding IDC's functions/operations" in order for the Court to determine IDC's principal place of business. (Balon Decl. ¶ 27). This contention is mistaken because once challenged, the party invoking diversity jurisdiction bears the burden for asserting the existence of diversity. See Lunney, 319 F.3d at 554; see also Media Duplication Servs. v. HDG Software, 928 F.2d 1228, 1236 (1st Cir. 1991) (holding that the "burden of proving a corporation's principal place of business, based on the location of corporate activities at the time suit is instituted, rests upon the party asserting existence of diversity jurisdiction") (citing 13B Wright, Miller & Cooper, *Federal Practice & Procedure* § 3625, at 640 (1984)).

This Court is unconvinced that Defendant IDC maintains its principal place of business in Illinois. (Compl., ¶ 15.) Notably, Plaintiff's allegation is only that Defendant IDC "maintains a place of business" in Illinois, not that it is its *principal* place of business, which is what is required for diversity analysis. (Compl., ¶ 15.) Although IDC's website indicates that its sales office is located in Illinois, Plaintiff's argument does not pass muster because it is explicitly contradicted by multiple affidavits supplied by Defendants. (See Affidavit of Daniel Beard ("Aff. Beard"), Aff. Abbott.) First, the Hinsdale, Illinois, sales office is actually Daniel Beard's private residence and home office. (Aff. Beard ¶ 3.) Beard is an independent contractor who served as a sales consultant to IDC on general market intelligence from April 2004 to December 2009. (Aff. Beard ¶¶ 1,4; Aff. Abbott, ¶ 5.) During this period, Beard was never an employee of IDC. Id. Accordingly, Plaintiff's assertion that Defendant IDC retains its principal place of business in Illinois fails.

Rather, the evidence demonstrates that Defendant IDC's principal place of business is in New York. For example, in his affidavit, Defendant Abbott stated that IDC maintained its "principal office" in New York since 2002. (Aff. Abbott, ¶ 4, Ex. 2). In the Agreement, Plaintiff even expressly recognized that IDC is a "Delaware corporation, with offices at 10 Rockefeller Plaza, Suite 604, NY, NY 10020." (Aff. Abbott, ¶ 6, Ex. 3.) As CEO of IDC, Defendant Abbott conducted business meetings with Plaintiff in New York as well. (Aff. Abbott, ¶ 7.) Plaintiff has failed to present any evidence to rebut Defendants' evidence that its principal place of business is in New York.

Accordingly, for the foregoing reasons, this Court finds that Defendants Abbott and IDC are both citizens of New York. Because Plaintiff is also a citizen of New York, diversity is not complete and this Court lacks subject-matter jurisdiction. Moreover, given the absence of compelling contradictory evidence, this Court finds that an evidentiary hearing on this issue is unnecessary.

### D. Defendants' Rule 11 Request

Defendants' request that this Court issue an Order to Show Cause why Rule 11 sanctions should not be imposed on Plaintiff. Rule 11(b) requires that all representations to the court (including pleadings) by parties be "formed after an inquiry reasonable under the circumstances . . . ." Fed.R.Civ.P. 11(b). Parties' "factual contentions" must have "evidentiary support" or "likely [to] have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed.R.Civ.P. 11(b)(3). On its own initiative, a court may order a party or its attorney to "show cause why conduct" has not violated Rule 11(b).

Fed. R. Civ. P. 11(c)(3). In its Notes to the 1993 Amendments to Rule 11, the Advisory Committee stated that "show cause orders will ordinarily be issued only in situations that are akin to a contempt of court."

The Second Circuit has interpreted this language to require a finding of bad faith on the part of an attorney. See In re Pennie & Edmonds LLP, 323 F.3d 86, 90 (2d Cir. 2003). Courts refrain from imposing these sanctions in proceedings where such action would "stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." Eastway Construction Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir.1985) (quoted in Motown Productions, Inc v. Cacomm, Inc., 849 F.2d 781, 785 (2d Cir. 1988)). In other words, Rule 11 must be construed to allow "innovation and zealous representation while punishing only those who would manipulate the federal court system for ends inimicable to those for which it was created." Id.

In the present case, there is no basis to issue an Order to Show Cause. Contrary to Defendants' assertion, Plaintiff's "factual contentions" were supported by evidentiary support, albeit insufficient to sustain its burden of proof. (See, e.g., Balon Decl., ¶¶ 4, 18, Ex. A, B, D.) This evidence arguably supported Plaintiff's contention that Defendant Abbott was a Colorado citizen and Defendant IDC had its principal place of business in Illinois. Consequently, because Plaintiff provided some evidentiary support for his jurisdictional claims and does not appear to have acted in bad faith, this Court finds no basis to issue the requested Order to Show Cause.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is granted in part and denied in part. Defendants' request to dismiss Plaintiff's complaint for lack of subject-matter jurisdiction is granted. Defendant's request for the issuance of an Order to Show Cause is denied. Plaintiff's request for an evidentiary hearing with respect to determining the parties' citizenship and domicile is also denied.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss is GRANTED in part and DENIED in part, consistent with this decision.

FURTHER, that Plaintiff's complaint is DISMISSED and the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:      July 19, 2010
               Buffalo, New York

                                              /s/William M. Skretny
                                               William M. Skretny
                                                    Chief Judge
                                          United States District Court